Martin, J.
delivered the opinionof the court. In this case a rule was obtained by the as- signees of Wm. P. Mecker, creditors by judici- al mortgage of the estate of Williamson & Pat- ton, ordering the syndics of the creditors of that estate to shew cause why they should not re- scind that mortgage, make a bill of sale of a sale of a *619 house, by them sold to S. Henderson, which was subject to said mortgage, and pay to Mecker's assignees the proceeds of that sale, as well as the price of some land lying in the Alabama territory, which was also sold by the said syn-dics. The syndics, in answer to that rule, state, they have no power to rescind the mortgage in question; that as to the proceeds of the Alabama lands, they are restrained from paying them by a bond which they have enter- ed into to pay only when the right of the claim- ants shall have been established; they further say that the judgment under which the assignees claim is null, and that it gives them no right to be paid in preference to the other creditors. The district court, considering that they had not sustained their pleas, made the rule absolute, and ordered them to pay into the hands of the assignees the sum by them claimed. From this decree the syndics have appealed.
East'n District.
July, 1818.
Under a general allegation of nullity, nothing which does not appear on the record can avail.
A judicial mortgage cannot extend to lands out of the state.
A doubt was suggested whether this is a cision from which an appeal can lie, but that it has between the parties the effect of a final judg- ment, and bears all the marks of such except the name, is so evident, that any demonstration of this is deemed useless.
The first cause shewn by the syndics of Wil- liamson and Patton, why they should not com- corn- *620 ply with the rule, is, that they have themselves no power to rescind the mortgage obtained by the assignees of Wm. Mecker, and that the mortgagees alone can exercise that right. A law enacted on the 20th of February, 1817, concerning the voluntary surrender of property, has especially provided, that for the purpose of effecting the sale of the property of the insolvent the syndics shall be authorized to release the mortgages existing on it; but the syndics of Williamson and Patton contend that this provision is not applicable to failures made anterior to that law. Whether it is or not, we think that this act did not introduce any innovation on this particular subject, and that before its enactment syndics of creditors were fully vested with the power which the present parties disclaim exercising. Before appealing to any authorities on that point, it may be premised that this results from the nature of things ; as soon as a failure is declared, all the property of the debt- or passes into the hands of his creditors. A general liquidation becomes necessary, for which purpose the creditors must resort to a sale of all the estate. To effect this, the creditors make choice of agents, under the name of syndics, who are vested with the necessary authority to do for all the creditors what these *621 would have a right to do for themselves. The sale which they make of the property to the end of paying each creditor, according to his rank and privilege, is a sale made by all. After such a sale, no individual creditor can retain a lien upon the property sold and paid for, any more than he could retain it after selling the property himself and receiving the price. The rescission of the mortgages and privileges is a necessary consequence of that sale. Nor does it appear requisite that a formal release of them should be given, because when the creditor has caused his pledge to be sold to have payment of his debt, the pledge is gone, and is re-placed by the price for which it sold. Febrero, book 3, de juicios, ch. 2, sect. 5, n. 340, speaking of the purchaser of property exposed at public sale, says : “ he is equally free from any molestation on the part of the creditors, who were parties to the concurso, and at whose instance the thing was sold, although the purchase money should not be sufficient to pay their claims, because by their consent to the alienation of the property, their right on the thing was relinquished,” &c. It is our opinion that, by a sale legally made at the instance of the creditors, through their syndics, all mortgages and privileges, which existed in favor of those who were *622 parties to the concurso, become ipso jure extinct, and that a formal release of them is not necessary: but that when such release is required by the purchaser, the syndics are the proper persons to give it. In this case the sale of the house to S. Henderson does not appear to have been made in the manner required by law ; but the mortgage creditors having, by their demand of the purchase money, assented to the alienation, and ratified the act of their agents, the respective situation of these parties is the same as if the syndics had originally observed the established rules.
But if the syndics are authorized to release the mortgages which may exist on the property sold, in order to receive the purchase money, they say that this money ought not to be paid to the assignees of William P. Mecker in preference to the other creditors, because the judgment under which they claim is null. Under that plea, however, they do not appear to have attempted to shew any ground of nullity apparent on the face of the record; but they offered to go into evidence to prove that the judgment was null, collusive and fraudulent.
Admitting the recourse of nullity against judgments still to exist, a question which this court will be unwilling to decide, so long as *623 there shall be no absolute necessity to pronounce upon it. Mecker's assignees vs. Williamson and Patton's syndics, 4 Martin, 625.
We believe that a general allegation of nullity does not put at issue all the facts from which any of the causes of nullity can arise, but only such as may be apparent on the face of the record. The causes of nullity, as laid down by the Spanish jurists, are multifarious. Most of them are vices or defects of form, proceeding from violation of the solemnities prescribed by law in the administration of justice. Of those proceedings the only legal evidence is the record ; and therefore, a general allegation of nullity may well embrace all the questions arising on the face of it, because the parties are not at liberty to seek evidence elsewhere; but when the cause, from which the nullity is expected to be shewn, depends on facts out of the record, then a special allegation of such facts is indis-pensible to enable the adverse party to come prepared to meet them. Nothing would be more unjust than to submit him, under a general allegation of nullity, to try any question which the complainant might think proper to start. For example, a judgment is said to be null when it has been obtained by means of forged papers, when it has been procured by bribery, or when *624 the party, whose oath has been required for some discovery, has perjured himself. Can he, against whom the nullity is alledged generally, be compelled to go to trial, upon any or all of these matters? That would be contrary to all principles of law and rules of practice.
The same reasoning will apply to the testimony offered to shew that the judgment was obtained by collusion and fraud, that fact not being at issue between the parties, under the general allegations contained in the pleas of the appellants.
It is our opinion that the only error, in the decree complained of, is in that part of it which allows to Meeker’s assignees the proceeds of the Alabama lands ; because that property, being situated out of the territory of Orleans, as then possessed by the United States, could not be affected by the judicial mortgage under which they claim.
It is, therefore, ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed; and this court, proceeding to give such a decision as they think ought to have been rendered below, do order, adjudge and decree, that the appellants do complete the sale by them made to S. Henderson *625 of the house mortgaged to the appellees, and pay into the hands of the appellees the purchase money of the same, when received: and it is further ordered, that the appellees do pay tho costs of this appeal.
Duncan for the plaintiffs, Livingston for the defendants.